381 So.2d 1032 (1980)
Fred RAY
v.
STATE of Mississippi.
No. 51654.
Supreme Court of Mississippi.
March 19, 1980.
*1033 McGee & Bogen, Edward J. Bogen, Jr., Leland, for appellant.
A.F. Summer, Atty. Gen. by Susan L. Runnels, Sp. Asst. Atty. Gen., Jackson, for appellee.
EN BANC.
SUGG, Justice, for the Court:
Fred Ray was indicted for murder, convicted of manslaughter, and sentenced to a term of 15 years by the Circuit Court of Washington County. On appeal Ray assigns the following errors:
(1) The trial court erred in granting state's Instruction No. S-2; (2) the trial court erred in refusing to grant defendant's requested Instruction No. D-6; (3) the trial court erred in refusing to allow introduction into evidence of the deceased's criminal record, and (4) the trial court erred in failing to grant defendant's motion for a peremptory instruction and the verdict of the jury was contrary to the overwhelming weight of the evidence.
Ray and Brantley had a drink together at the Casablanca Cafe in Greenville around 10:30 and 11:00 o'clock a.m. on May 14, 1978. They left the cafe and engaged in a dice game nearby which ended in an argument. Ray and Brantley returned to the cafe and Ray departed in his automobile. While driving away from the cafe, Ray's muffler fell off his automobile, he armed himself with a pistol which was in the glove compartment of his car, then returned to the cafe, and left the cafe in a taxi to go to his brother's home. His brother carried Ray back to the cafe. Brantley was in front of the cafe when Ray returned and the argument which started at the dice game was resumed.
The evidence of what happened from that time until Ray shot and killed Brantley is conflicting. The state's case shows that Ray entered the cafe with a pistol in his hand. The two parties argued and Brantley pointed his finger in Ray's face and threatened to take the gun away from Ray and whip him. One or two shots were fired, Brantley ran out of the cafe with Ray following. Brantley ran behind a car and Ray kept him pinned down behind the car until Brantley started crawling toward a telephone pole, at which time Ray fired two more shots. The state's witness did not see a pistol in Brantley's hand but a small caliber pistol was found near the body of Brantley. The pistol had four cartridges in it but had not been fired recently. Ray's gun was recovered and it contained four fired and two unfired cartridges.
Ray testified that when he returned to the cafe the last time Brantley accosted him outside the cafe, drew a small caliber pistol, put his finger on Ray's nose, and threatened him. Ray said he pulled his pistol at that time, but neither fired, whereupon Ray entered the cafe. Ray said that Brantley followed him into the cafe and continued *1034 making threats against him and made a "fast turn going toward the door." He said Brantley drew his pistol as he got to the door. Ray then commenced firing his pistol and ran out the door behind Brantley. Ray admitted firing several shots at Brantley who was behind an automobile. One of Ray's witnesses testified that he saw a dark object in Brantley's hand but could not tell what it was.
Appellant's first assignment of error is not well taken because it is well settled that one indicted for murder and convicted of manslaughter may not complain of a murder instruction even though the instruction is erroneous. King v. State, 315 So.2d 925 (Miss. 1975).
Ray next contends that the court erred by refusing the following instruction:
You are instructed that under the law a man is justified in carrying a weapon if his life has been threatened or he has been threatened with great bodily harm and he has a good and sufficient reason to apprehend an attack from an enemy, and if you believe from the testimony in this case that the defendant's life had been threatened or that the defendant had been threatened with great bodily harm, and therefore had reason to apprehend a serious attack, then the defendant was justified in carrying a pistol.
Similar instructions have received varied treatment at the hands of this Court resulting in two lines of cases. One line of cases holds that the defendant is entitled to the instruction, the other holds that he is not entitled to the instruction. Cases holding that the defendant is entitled to the instruction are: Smith v. State, 75 Miss. 542, 23 So. 260 (1897); Wood v. State, 165 Miss. 363, 144 So. 545 (1932) and Austin v. State, 324 So.2d 245 (Miss. 1975).[1]
The first case that expressed a different view is Molphus v. State, 124 Miss. 584, 87 So. 133 (1920). In Molphus, the court gave the defendant an instruction that if the life of the defendant had been threatened and he had a good and sufficient reason to apprehend a serious attack from an enemy, and if the jury believed from the testimony that defendant's life had been threatened and he had a reason to apprehend a serious attack, then the defendant was justified in carrying a pistol.
The defendant requested another instruction to the same effect. With reference to refusal of the second instruction, the Court stated:
This instruction received by the defendant was certainly all he could ask. The defendant was not on trial for carrying a concealed weapon, and the court was not required to instruct as to his right to carry a weapon. The court was here dealing with the use of the weapon and the lawfulness of the use, and not with the lawfulness of its being carried. So we think there was not error in refusing the instruction No. 2 above set out which was refused by the court. (124 Miss. at 597, 598, 87 So. at 135).
Molphus did not cite Smith, supra, and apparently affirmed because the defendant had received one instruction on his right to arm himself.
Three cases followed Molphus. These are: Durham v. State, 158 Miss. 833, 131 So. 422, 423 (1930); Richey v. State, 220 Miss. 790, 72 So.2d 152 (1954) and Shannon v. State, 237 Miss. 550, 115 So.2d 293 (1959). These three cases hold that it was not error to refuse defendant's instruction that he had a right to carry a concealed deadly weapon if he had been informed and believed that his life had been threatened or he was threatened with great bodily harm. The rationale of these cases was the same as stated in Molphus, namely, that the defendant was not on trial for carrying a concealed weapon and the court was not required to instruct as to his right to carry a weapon. These cases state that the court *1035 was dealing with the use of the weapon and the lawfulness of the use, not with the lawfulness of it being carried. In Shannon, supra, we stated:
We think Molphus, Durham and Richey state a sound principle of law. The accused was not on trial for carrying a concealed weapon, but for the use which he made of it. The requested instruction would simply be a comment upon the evidence. The decision in Wood should be limited to the peculiar circumstances of that case, where the instruction joined the right to carry the weapon with the right to approach deceased on a peaceful mission. The latter factor is nonexistent in the instant case. See also 94 C.J.S. Weapons § 9d, p. 500. The trial court properly refused defendant's requested instruction No. 1. (237 Miss. at 556, 557, 115 So.2d at 295).
From the foregoing, it is readily apparent that we have two lines of cases with divergent views on the question of the propriety of giving an instruction like the one requested by the defendant in this case. Three of our cases hold that a defendant is entitled to such an instruction, three cases hold he is not entitled to the instruction, and one case, Molphus, supra, is inconclusive. We are of the opinion that a defendant is entitled to such an instruction because it is important for a jury to understand that a defendant has a right to carry a concealed weapon under certain circumstances. Section 97-37-9 Mississippi Code Annotated (Supp. 1979). Accordingly, we overrule Molphus, Durham, Richey and Shannon, to the extent they conflict with our holding in this case.
We hasten to add, however, that before a defendant is entitled to such an instruction there must be evidence to support the instruction. This is in accord with the general rule that there must be evidence to justify granting an instruction. In this case, Ray contends he was entitled to the instruction because he had good and sufficient reason to apprehend a serious attack from an enemy, and that he did so apprehend an attack. Section 97-37-9(a). Ray claims that he was justified in arming himself with a pistol because Brantley had threatened his life. The only evidence pertaining to threats made by Brantley directed toward Ray before Ray armed himself came from the testimony of Ray. Ray's testimony about the threats during the dice game follows:
He said, "I don't owe you a damn nickel and not expecting to pay you nothing. I said, "You just want to take $10.00 away from me, is that right?" He said, "Well, I am going to have it from you." I said, "I ain't planning on giving it to you." That's word for word.
After the argument at the dice game, Ray and Brantley, who was nicknamed "Spooky," returned to the cafe. On direct examination of Ray the following questions and answers appear in the record:
Q. Did the man you call Spooky  did he say anything to you  anything else to you out in front of the Casablanca at that time?
A. At that particular time  no more than what never he find me, he had to get his money.
.....
Q. What was the purpose of your taking that gun out of the glove compartment of the car?
A. Because he had threatened me to take his money any way he could find. Anywhere he find me, he was threatening for to get it. And that was to protect myself.
The testimony does not support the instruction because it does not show that Ray had a good and sufficient reason to apprehend a serious attack from Brantley. Accordingly, we hold that the defendant was not entitled to Instruction D-6.
Defendant also argues that the trial court erred by refusing to let him introduce into evidence the criminal convictions of the deceased, Robert Brantley. In support of his argument, defendant relies solely on Freeman v. State, 204 So.2d 842 (Miss. 1967) where we stated:

*1036 The assignment of error pertaining to the police record of the deceased is not well taken for the reason that it does not disclose any trait or characteristic of violence and, as such, is irrelevant and the court was correct in excluding the same. (Emphasis added). (204 So.2d at 843).
Defendant argues that, based on the language in Freeman, conversely stated, the criminal record of Brantley should have been admitted into evidence because the criminal convictions of Brantley showed his propensity for violence. Defendant's reliance upon Freeman is misplaced for two reasons. First, Freeman does not state that the criminal record of a deceased may be introduced into evidence, and that conclusion cannot be drawn from the case by stating conversely the language of Freeman. That case dealt with the single question of the relevancy of evidence.
Second, previous convictions of a deceased are specific antecedent acts of violence, and it is well settled that specific antecedent acts of violence committed by a deceased are not admissible as evidence of the bad reputation of the deceased. Shinall v. State, 199 So.2d 251 (Miss. 1967); Newsome v. State, 197 Miss. 797, 20 So.2d 708 (1945); McCoy v. State, 91 Miss. 257, 44 So. 814 (1907). We have also held that testimony of antecedent specific acts of violence between the deceased and third persons are not admissible to show the bad reputation of the deceased. McDonald v. State, 218 So.2d 21 (Miss. 1969); Shinall, supra, and King v. State, 65 Miss. 576, 5 So. 97 (1888). Defendant was permitted to introduce evidence by several witnesses that the deceased had a bad reputation for peace and violence. This was all he was entitled to show under our decisions.
Ray's last argument is that he was entitled to a peremptory instruction and that the verdict of the jury was contrary to the overwhelming weight of the evidence. The evidence in this case was conflicting and presented a jury question; therefore, this argument is without merit.
AFFIRMED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.
NOTES
[1] The opinion in Austin includes Echols v. State, 99 Miss. 683, 55 So. 485 (1911) and Klyce v. State, 78 Miss. 450, 28 So. 827 (1900), as cases in which the instruction was permitted. Austin is incorrect in this statement because an examination of Echols and Klyce shows that the instruction in those cases is not similar to the instruction in Smith and Wood.