Lewis Carter was tried in the Circuit Court of Covington County upon a charge of having murdered one Tommy Maxwell. The trial resulted in his conviction of manslaughter, for which offense he was sentenced to serve twenty years in the Mississippi State Penitentiary. He has appealed from that conviction and is at liberty under $20,000 bail.
The homicide, which gave rise to the prosecution, occurred during a fight which followed an automobile collision involving a vehicle driven by appellant's son, Danny Carter, and a pickup truck operated by Tommy Maxwell.
Several grounds for reversal are assigned.
Under one of his assignments, appellant asserts that the trial court erred in denying his motion for a directed verdict. Under this assignment, appellant challenges the sufficiency of the evidence to support the conviction.
The State's case against Carter was based upon the testimony of a number of witnesses, including the testimony of several eyewitnesses. It appears that on the night of March 25, appellant, Lewis Carter, was informed by one Runnels that his son, Danny Carter, had been involved in the automobile accident with Maxwell and that there was a fight in progress. Runnels testified that when he gave Lewis Carter this information, Carter stuck a pistol in his pants and said: "He was going to kill the son of a bitch." Whereupon, appellant, went to the scene and a "tussle" ensued, wherein the wife of the victim, Maxwell, appellant's own wife, appellant's son, Danny Carter, appellant himself and (deceased), Tommy Maxwell, were involved. Runnels testified that "Tommy (deceased) was knocked down and then Lewis (appellant) pulled — pointed — the gun toward him when he started to get up and shot him (Maxwell)." *Page 819 
Runnels' testimony was corroborated in material respects by that of Patricia Maxwell, John David Kirkley and Chuck Duckworth, eyewitnesses to the homicide.
Jerry Dennis identified the weapon used as a pistol he had previously sold to appellant Carter. He did this through initials carved inside the handle.
Witness Lance Eubanks testified "Well after the first shot was fired down, he (appellant Carter) pulled the gun up and pushed Tommy (the victim) over off the corner trunk of my car and then the next shot was to the head of Tommy."
When the State had rested its case, a motion was made by appellant for a directed verdict which was denied. Whereupon, appellant proceeded to introduce evidence in his own behalf.
Although there are substantial conflicts in the evidence, it is clear that the evidence introduced by the prosecution amply supports the jury's verdict of guilty of manslaughter. The trial court's action in denying appellant's motion for a directed verdict or for a peremptory instruction was correct. Davis v.State, 320 So.2d 789 (Miss. 1975); Warn v. State,349 So.2d 1055 (Miss. 1977); Murphree v. State, 228 So.2d 599 (Miss. 1969). There is no merit in this assignment.
Also assigned as error is the granting by the trial court of State's jury instruction No. 7, which defined murder.
It should be noted that appellant was convicted of manslaughter, not murder, and this was tantamount to a verdict by the jury of not guilty of the crime of murder. One convicted of manslaughter may not on appeal complain of an instruction dealing with murder, even if erroneous. Moss v. State, 386 So.2d 1129
(Miss. 1980), Ray v. State, 381 So.2d 1032 (Miss. 1980), Hullv. State, 350 So.2d 60 (Miss. 1977), King v. State,315 So.2d 925 (Miss. 1975). Furthermore, the jury was amply instructed on accident, a theory of appellant's defense, and the burden resting upon the State. We hold, therefore, that the murder instruction did not mislead the jury to appellant's prejudice.
The only remaining contention by appellant is that retrial of the criminal case, after entry of a mistrial, constituted an unconstitutional exposure of appellant to double jeopardy.
The first trial of this case was begun on July 17, 1978 and resulted in a mistrial. In the course of the presentation of the State's case, the district attorney concluded that one of the witnesses who had testified had committed perjury. There followed an examination of this witness directed toward developing the circumstances relating to the testimony of the witness thus brought in question. This examination was conducted partially in the presence of the jury and also continued in chambers, out of the presence of the jury. At about this time it was discovered that witnesses who had already testified were being questioned by witnesses who were sequestered and awaiting their turn to testify, and were relating to them what had transpired during the giving of their testimony and to what they had testified. Appellant Carter made a motion for a mistrial and the State responded "considering that particular motion (Carter's for a mistrial) was set forth by counsel for defendant and the terms of this particular testimony of this witness and by what the State feels to be a necessary witness for the trial of this court (sic) and by placing him on trail (sic) — recall him again would have a tendency to confuse the jury as to which was the truth, — by virtue of this particular testimony and his testimony be (sic) recalling him would greatly prejudice the rights of the State of Mississippi and, therefore, Your Honor, the State would be in position to confess the mistrial."
Following the above statement by the district attorney a colloquy between the court and counsel followed in the course of which the court sustained appellant's motion for a mistrial. Afterward, counsel for appellant attempted to withdraw their former motion for a mistrial "because we do not think that what the district attorney has asked for, it amounts to a mistrial." At the conclusion of argument, appellant's counsel made a motion to withdraw their *Page 820 
motion for a mistrial, which the court had previously sustained. The court denied the motion, pointing out:
 Well, Mr. Buckley, heretofore the Court — you made a motion for a mistrial, which the Court seriously considered, and I overruled it at that time. At this time, you have made a motion for a mistrial in the case, although the district attorney elaborated additional reasons, but your motion for a mistrial has been sustained. Now, if you have any other motions or anything you want to hear, I'll be glad to hear it.
 BY MR. BUCKLEY:
 Well, we — we move that our motion for a mistrial be withdrawn and that was what we were doing. We — because the district attorney attached additional conditions to it, additional things, we do not think it constitutes grounds for a mistrial, we think it's not cause for a mistrial, for that reason was brought about the conduct of the State of Mississippi, their method of interrogating their witnesses and their method of interviewing their witnesses. Mr. Crawford's statement of grounds of mistrial has nothing to do with the grounds that we stated. And I was — at any rate, it was for the protection of our record and it may have been premature at the very best on it when we went and made it. As the Court remembers, and I told you that it — earlier that the testimony might develop to the contrary.
 BY THE COURT:
 You asked when the Jury retired to make a motion. I told you I'd hear you just as soon as I came back on the bench.
 BY MR. BUCKLEY:
 Yes, sir.
 BY THE COURT:
 So, I did. The motion was made. It is sustained. If it's another motion to set aside and vacate the motion for a mistrial, that motion is overruled. Let the Jury return.
In Schwarzauer v. State, 339 So.2d 980 (Miss. 1976) wherein the defendant argued that he was illegally placed in double jeopardy this Court found:
 The action of the trial judge in granting the mistrial at the first trial cannot be said to be unreasonable, even though another judge similarly situated might have followed a different course. We are unwilling to rule that the double jeopardy provision of the Fifth Amendment to the United States Constitution means that every time a defendant is put to trial he must be set free if the trial aborts and does not conclude with a final judgment. The better rule which we apply here is that trial judges are peculiarly situated so as to decide (better and more logically than anyone else) when a trial should be discontinued. Such action may be taken in proper cases, after which the defendant may be tried by another panel of jurors, when the trial judge reasonably concludes that the ends of justice would thereby be best served, even though the defendant objects. In such situations, and absent any indication of prosecutorial manipulation as is the case here, we will not reverse a criminal conviction. We recognize that the fair and orderly administration of justice requires that trial judges must have reasonable discretion in dealing with errant jurors who demonstrate their unwillingness to abide by the instructions of the court, or other unanticipated occurrences which transpire during trials. Our holding is in accord with Illinois v. Somerville, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973), and Gori v. United States, 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961), both of which recognize that there are no rigid rules that can be followed in every case where double jeopardy is argued. Upon this record, our judgment is that the trial judge in ordering the mistrial appropriately acted within his sound judicial discretion in furtherance of the ends of justice. Affirmance here is in accord with Bounds v. State, 271 So.2d 435 (Miss. 1973). Bounds
rejected a plea of double jeopardy on the ground that the defendant's first trial did not result in his conviction or acquittal (as is true in instant *Page 821 
case) pursuant to Mississippi Constitution of 1890, Article III, § 22. [339 So.2d at 981-982].
We hold that the entry of the mistrial under the circumstances reflected by the record in this case was not "tantamount to an acquittal" and, of course, was not a conviction. Although the record is not overly clear in some respects, it does reflect that two serious questions had arisen affecting the propriety of continuance of the trial, either of which was capable of supporting a finding that considerations of fairness and justice required that the trial in progress be aborted and that a new trial be granted. To continue the trial under the circumstances would have been fair neither to the appellant nor to the State.
Thereafter, on application of appellant, a justice of this Court directed that the writ of habeas corpus issue, returnable to the Circuit Court of Covington County, to be there tried upon its merits and a final disposition made thereof.
The single issue presented by appellant on the trial of that case (the habeas corpus case) was the same as that now put forward as an assignment of error on the present appeal. In support of his case, in the habeas corpus case, the entire record of the trial which resulted in the mistrial was introduced by Carter. The case was fully tried, and a decision and final judgment were rendered by the habeas corpus court adverse to appellant's claim that he was entitled to be discharged, rejecting the contention that a retrial, following entry of the mistrial, would unconstitutionally subject him to double jeopardy. From that adverse decision and judgment of the habeas corpus court, appellant prosecuted an appeal to this Court, based upon the same contention, and the issue was fully briefed and presented to this Court in case No. 51,432 wherein the judgment of the habeas corpus court appealed from was affirmed, as appears in Carter v. State, 377 So.2d 921 (Miss. 1979). No petition for rehearing was filed by appellant. Generally an adjudication of the issues by a court in a habeas corpus proceeding is the law of the case and those issues will not be reconsidered in subsequent proceedings to review a conviction. 39A C.J.S. Habeas Corpus § 227 (1976), Goldsby v. State, 240 Miss. 647, 123 So.2d 429
(1960).
In order to elevate an order granting a mistrial in a criminal case at the request of the defendant to one which could form the basis of a claim of double jeopardy, it must be shown not only that there was error, which is the common predicate to all such orders, but that such error was committed by the prosecution or by the court for the purpose of forcing the defendant to move for the mistrial. Justice Rehnquist, as Circuit Judge, Divans v.California, 434 U.S. 1303, 98 S.Ct. 1, 54 L.Ed.2d 14 (1977).See also, United States v. Dinitz, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976), United States v. Jorn, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971), Downum v. United States,372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963).
Under the standard noted by Justice Rehnquist, in his denial of the application for stay in Divans v. California, supra, the mistrial in the present case, on motion of appellant, although not opposed by the State, does not appear to have been made or granted in bad faith or for an improper purpose by either the judge or the prosecutor, and therefore, appellant's plea of double jeopardy did not bar retrial of the defendant.
Moreover, the present case is distinguished from Jones v.State, 398 So.2d 1312 (Miss. 1981), wherein a subsequent trial of the defendant was barred by double jeopardy: the State inJones offered a taped recording of the defendant's confession through the testimony of several law enforcement officers, who stated that the defendant had been given his Miranda rights prior to his confession. When the tape was played before the jury, the first words heard were the defendant's request for an attorney. Out of the presence of the jury, it was discovered that there were two recordings of the defendant's confession made by the officers, and, in chambers, the State noted that it could no longer proceed before the jury. Clearly, the mistrial was based on *Page 822 
the use of evidence brought forth by the State, which was obtained through an apparent violation of defendant's constitutional rights, and gave rise to the court's inference that a bad faith effort had been made by the State in the prosecution and, therefore, retrial was barred. In the present case, on the other hand, the motion was made by appellant, and, although the State acquiesced, the State had no reason to anticipate that the witness on the stand would recant his statement previously given, or that witnesses who had testified would communicate with other witnesses who had not and were still sequestered.
Although the previous finding by this Court on review affirming the refusal of the habeas corpus court to grant habeas corpus inCarter v. State, supra, is the law of the case, we expressly reaffirm the propriety of that decision and hold that retrial of the defendant was not barred as an unconstitutional exposure of appellant to double jeopardy. The conviction of the defendant is hereby affirmed.
AFFIRMED.
PATTERSON, C.J., ROBERTSON, P.J., and SUGG, WALKER, BROOM, LEE, BOWLING and HAWKINS, JJ., concur.